UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ROBERT A. WEIG,

                            Plaintiff,

     v.                                             Civil Action No. _____

GC SERVICES LIMITED
PARTNERSHIP,

                            Defendant.
_____

## COMPLAINT AND DEMAND FOR JURY TRIAL

### I. INTRODUCTION

1. This is an action for actual and statutory damages brought in response to Defendant's violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (hereinafter "FDCPA") which prohibits debt collectors from engaging in abusive, deceptive, and unfair practices.

### II. JURISDICTION AND VENUE

2. Jurisdiction of this court arises under 15 U.S.C. §1692k(d) and 28 U.S.C. § 1331.

3. Venue is proper in this district under 28 U.S.C. §1391(b) in that the Defendant transacts business here and the conduct complained of occurred here.

### III. PARTIES

4. Plaintiff Robert A. Weig is a natural person residing in the County of Erie and the State of New York and is a "consumer" as that term is defined by 15 U.S.C. §1692a(3).

5. Defendant GC Services Limited Partnership, (hereinafter "GC Services") is a foreign limited partnership organized and existing under the laws of the State of Delaware and is a "debt collector" as that term is defined by 15 U.S.C. §1692a(6).

6. Defendant regularly attempts to collect debts alleged to be due another.

7. The acts of the Defendant alleged hereinafter were performed by its employees acting within the scope of their actual or apparent authority.

8. All references to "Defendant" herein shall mean the Defendant or an employee of the Defendant.

## IV. FACTUAL ALLEGATIONS

9. That Plaintiff Weig incurred a student loan debt to U.S. Department of Education in order to attend California Western School of Law and the University of Florida in Gainsville, Florida. This debt will be referred to as "the subject debt."

10. That the subject debt arose out of a transaction in which money, services or property, which was the subject of the transaction, was primarily for personal, family and/or household purposes. As such, said debt is a "debt" as that term is defined by 15 U.S.C. §1692a(5).

11. That Plaintiff thereafter defaulted on the subject debt. However, Plaintiff was sincere about repaying the subject debt as evidenced by his payments to several collection companies, including OSI Collections Services, Inc., to whom he made payments on the subject debt over the course of almost 17 years. More recently, Plaintiff negotiated settlement with Defendant and the U.S. Department of Education and settled said debt in full by way of Accord and Satisfaction.

12. That upon information and belief, Defendant GC Services was then employed by the account holder to collect on the subject debt.

13. That beginning in or about late-June of 2008, Defendant made several telephone calls to the home of Plaintiff in an attempt to collect the subject debt.

14. That during at least one telephone conversation in or about early August of 2008, Defendant informed Plaintiff that they would do their best to help him resolve the matter and would consider accepting a single payoff proposal. Plaintiff then informed Defendant that he would assess his financial situation and send a settlement proposal as soon as possible.

15. That Defendant's oral assurance caused Plaintiff to believe that they were sincere in their actions and that they would do their best to help him settle the subject debt and he immediately mailed a letter to Defendant with a good faith offer to pay $30,000.00 in order to settle the subject debt on or about August 11, 2008.

16. That more than one month after their initial communication with Plaintiff, Defendant GC Services finally mailed Plaintiff a 30-day validation notice on or about July 17, 2008. Said letter informed Plaintiff that Defendant GC Services was attempting to collect the subject debt but again reassured that "We [GC Services] want to work with you to resolve your debt through the various repayment programs we have to offer" and that

"[you are encouraged to] take this opportunity to resolve your defaulted student loan account without unnecessary financial hardship."

17. That soon after, Defendant informed Plaintiff that he would be directly contacted by the U.S. Department of Education regarding the status of his settlement proposal.

18. That after patiently waiting for a reasonable period, Plaintiff still had yet to receive any communication from the U.S. Department of Education. Consequently, Plaintiff contacted Defendant GC Services, who then informed him that he would never be contacted by the Department of Education, but that Defendant would contact Plaintiff only after the Department of Education made a determination regarding his settlement proposal.

19. That when Plaintiff pointed out the inconsistency of Defendant's response, Defendant rudely replied that Plaintiff was mistaken and that the Department of Education would never directly communicate with him. Plaintiff was told that a GC Services employee named "Brian Gentry" had exclusive contact with the Department of Education and that he would be in contact with the Department of Education. After said Department made its determination, they would then contact Defendant, who would immediately notify Plaintiff of the decision.

20. That after patiently waiting for several more weeks, Plaintiff still did not receive any response regarding his settlement proposal from GC Services.  When Plaintiff then contacted the Settlement Division of the Department of Education, they informed him that they did not possess information regarding the settlement proposal.

21. That upon hearing the aforementioned response, Plaintiff wrote Defendant GC Services a reminder letter on or about November 14, 2008 restating the $30,000.00 settlement offer. Plaintiff also enclosed additional documentation that reflected previous payments made on the subject debt sent to other debt collection agencies between the time periods of September 1999 and May 2007 as justification for the settlement offer.

22. That in or about early February of 2009, almost six months later, Defendant informed Plaintiff that the Department of Education had rejected his settlement offer. Moreover, Plaintiff owed more than $50,167.48 in principle amount even though the face value of his original principle was totaled approximately $38,745.00. Defendant claimed that the amount stated on the face of the promissory notes were not equal to the actual amount borrowed because they did not include surcharges such as brokerage fees, handling fees, and other fees charged by various collection agencies that handled the subject debt in the past. Defendant then informed that after including capitalized interest, Plaintiff allegedly owed $133,436.61.

23. That Plaintiff was shocked by the enormity of the subject debt and requested permission to speak to the Department of Education staff with which Defendant had exclusive contact. Defendant informed Plaintiff that the Department of Education would not speak directly with Plaintiff.  Plaintiff requested the phone number for the Department of

3

Education but was informed by Defendant that they could not give out the direct number. The Defendant did, however, inform Plaintiff that he could call the general toll-free number in an attempt to contact the Department of Education.  The Plaintiff informed Defendant that after numerous attempts using the toll-free number, he was unsuccessful in reaching the Department of Education.

24. That Defendant GC Services warned Plaintiff that nonpayment of the subject debt would adversely affect his professional career in that he could face disciplinary actions or revocation of his license to practice law.

25. That Plaintiff understood Defendant's aforementioned statements, and the "least sophisticated consumer", as that term is defined by law, would have understood said statements to imply that a failure to submit to Defendant's demands to pay $133,436.61 would result in adverse consequences causing Plaintiff to be disciplined, suspended, or lose his license to practice law.

26. That contrary to Defendant's aforementioned representations, nonpayment of the subject debt would not suspend, revoke, or adversely affect Plaintiff's license to practice as he had not engaged in any professional misconduct.

27. That Defendant also notified Plaintiff that they intend to commence proceedings to seize, garnish, or attach Plaintiff's wife's assets for nonpayment of the subject debt, and Defendant also stated that there were new laws and legislation that would allow collection companies to go after a self-employed attorneys' income.

28. That despite Defendant's aforementioned representations, they lacked both the intent and the legal authority to take such actions because Plaintiff's newly wed wife is in no way legally obligated to make payment on the subject debt and that her assets were separate property exempt from collection efforts by creditors, and there were now new laws/legislation that would allow collection companies to seize self-employed attorneys' income.

29. That during the aforementioned telephone conversations, Defendant repeatedly spoke to Plaintiff in a sarcastic tone and told him that they were glad that he was finally taking responsibility for his actions, and insinuated that the delinquent payment of the subject debt reflected Plaintiff's immoral character.

30. That on or about February 5, 2009, the Defendant informed the Plaintiff that even though Plaintiff may have made previous payments totaling approximately $3,800.00, these payments would not be deducted from the subject debt because they did not have a record of the payments.  When Plaintiff asked for an accounting statement of said payments, Defendant said that they had no access to the payment statements.

31. That on or about the same day, Plaintiff again made a good faith effort to settle the subject debt with Defendant GC Services for $35,000.00 but Defendant again refused to acknowledge his settlement offer.

32. That on or about February 23, 2009, the Defendant informed Plaintiff that he should offer a settlement amount just over the current principal amount owed because Defendant had good success in getting the Department of Education to settle for that amount.  The Plaintiff then raised his offer to $51,000.00, which was then again rejected almost two months later.

33. Thereafter, Defendant agreed with Plaintiff to convey an offer to the Department of Education to settle the loan in full for the amount of $60,000.00, but this offer was also rejected.

34. That in early April 2009, Plaintiff called Defendant's office supervisor to find out if the $60,000.00 settlement offer, which was to have been conveyed to the Department of Education by the Defendant's top office manager, had been granted.  The Defendant's office supervisor informed Plaintiff that the settlement offer was refused.  The Plaintiff then demanded to speak with the office manager directly, who informed Plaintiff that he had not yet conveyed the $60,000.00 offer to the Department of Education.

35. That on or about April 6, 2009, Plaintiff contacted Rich Hanes of the U.S. Department of Education in an attempt to negotiate settlement of the loan, and Mr. Hanes informed Plaintiff that Defendant should not have forwarded the aforesaid earlier offers because Defendant should have known the Department of Education's policies regarding settlement of defaulted loans, and that Defendant should have known that Plaintiff's prior offers would be rejected.  Mr. Hanes also said that Defendant caused Plaintiff undue stress by leading Plaintiff to believe that he could resolve the loans for the said settlement offers, when in fact he could not.

36. As a result of the aforementioned, Defendant needlessly protracted the settlement and resolution of this matter over a period of almost ten (10) months.

37. That as a result of Defendant's acts Plaintiff became nervous, upset, anxious, and suffered from emotional distress.

### V. CAUSE OF ACTION

38. Plaintiff repeats, re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 37 above.

39. The conduct of Defendant as described in this complaint violated the Fair Debt Collection Practices Act (15 U.S.C. §1692 et seq.) as follows:

    A. Defendant violated 15 U.S.C. §1692d, 15 U.S.C. §1692d(2), and 15 U.S.C. §1692d(5) by engaging in conduct the natural consequence of which is to harass,

oppress, or abuse the hearer when they repeatedly insinuated that Plaintiff was an immoral person given his failure pay off the subject debt, by sarcastically stating that they are glad that he was "finally taking responsibility for his actions", by intimidating him with threats to damage his professional career by adversely affecting his ability to practice law, and by causing Plaintiff's home telephone to ring and engaging Plaintiff in telephone conversations repeatedly.

B. Defendant violated 15 U.S.C. §1692e, 15 U.S.C. §1692e(4), and 15 U.S.C. §1692e(5), by misrepresenting that they were willing to help Plaintiff resolve the debt repayment, by misrepresenting that they would accept a single payment settlement, by misrepresenting that they negotiate exclusively with the Department of Education and that they would contact him immediately if the Department decided to accept Plaintiff's settlement proposal, by falsely stating that nonpayment of the subject debt would cause Plaintiff to face disciplinary actions including suspension and revocation of the license to practice law, and by falsely stating that they intend to commence proceedings to seize, garnish, or attach Plaintiff's wife's separate property for nonpayment of the subject debt when such action cannot legally be taken.

C. Defendant violated 15 U.S.C. §1692e(2), 15 U.S.C. §1692f, and 15 U.S.C. §1692f(1), by using unfair or unconscionable means to collect or attempt to collect the alleged debt when they grossly misrepresented the character and amount of the alleged debt and solicited payment thereof.

D. Defendant violated 15 U.S.C. §1692g by failing to send the 30-day validation notice within five days of the initial communication.

40. That as a result of the Defendant's FDCPA violations as alleged herein, Plaintiff became nervous, upset, anxious and suffered from emotional distress.

**WHEREFORE**, Plaintiff respectfully requests that judgment be entered against the Defendant for:

(a) Actual damages;

(b) Statutory damages for pursuant to 15 U.S.C. § 1692k;

(c) Costs, disbursements and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k; and

(d) For such other and further relief as may be just and proper.

## VI. JURY DEMAND

Please take notice that Plaintiff Robert A. Weig demands trial by jury in this action.

Dated: May 27, 2009

                LAW OFFICES OF KENNETH HILLER, PLLC

                /s/ KIMBERLY T. IRVING
                Kenneth R. Hiller, Esq.
                Kimberly T. Irving, Esq.
                LAW OFFICES OF KENNETH HILLER, PLLC
                *Attorneys for the Plaintiff*
                6000 North Bailey Ave., Suite 1A
                Amherst, NY 14226
                (716) 564-3288
                Email: khiller@kennethhiller.com
                          kirving@kennethhiller.com